IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Ryan Cooper,<br><br>Plaintiff,<br><br>v.<br><br>Dr. John H. Keiser, president of Southwest Missouri State University ("SMS"); and the following members of the SMS Board of Governors: Barbara D. Burns, Michael L. Franks, Tom Carlson, Bill Darr, Michael Duggan, Mary Sheid, and Phyllis Washington; individually and in their official capacities,<br><br>Defendants. | CIV NO.: |

**VERIFIED COMPLAINT**

Comes now the Plaintiff, by counsel and pursuant to the Federal Rules of Civil Procedure, and for his causes of action against Defendants avers the following:

I.

**INTRODUCTION**

1. This is a civil rights action under 42 U.S.C. § 1983 to protect the constitutional rights of students at Southwest Missouri State University ("University"). By policy and practice the University unlawfully restricts these rights, as its policies are facially vague and overbroad, involve content based and viewpoint discrimination, and unconstitutionally restrict student speech. These constitutional defects give rise to both facial and as-applied constitutional challenges to the discriminatory policies.

1

2. University policy prohibits all debates, forums, rallies, demonstrations, peaceful protests, and other similar public forum activities, except in a free speech area called the Bear Paw.

3. The Bear Paw is an area of campus that is approximately 60 feet by 50 feet.

4. If Mr. Cooper (or any other student) would like to deliver a five minute speech on his way to class to fellow students as they pass by on the sidewalk, he cannot do so unless the speech is limited to the small Bear Paw free speech area.

5. Even in the Bear Paw free speech area, a student or student group must first register with the Conference Services Office before speaking.

6. Only recognized student organizations are permitted to ask their fellow students to support or join their organization on the University Campus.

7. Only recognized student organizations are permitted to invite a non-University speaker to speak at an event in a University facility.

8. The University has prohibited Mr. Cooper's student organization, Young Americans for Freedom ("YAF"), from becoming a recognized student organization based on the content of the organization's speech.

9. The University therefore restricts the free speech of the Plaintiff and other students throughout the campus.

10. To redress the irreparable harm that Plaintiff is suffering, and has suffered, under the University's policies and practices, Plaintiff seeks a declaratory judgment that the Defendants' policies violate First Amendment rights on their face and as applied and threatened to be applied to the Plaintiff and others.

11. Plaintiff also seeks preliminary and permanent injunctive relief to prevent Defendants from further enforcing the challenged policies in a manner inconsistent with his constitutional rights, and damages.

## II.

## JURISDICTION AND VENUE

12. Jurisdiction for this case is based on 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2002, and 42 U.S.C. §§ 1983 and 1988.

13. Venue is proper under 28 U.S.C. § 1391 in the Western District of Missouri because this claim arose there.

## III.

## IDENTIFICATION OF PLAINTIFF

14. Plaintiff Ryan Cooper is and was at all times relevant to this Complaint a resident of the City of Springfield, Missouri, and a student at the University.

15. Plaintiff Ryan Cooper is president of the student organization, YAF.

## IV.

## IDENTIFICATION OF DEFENDANTS

16. Defendant Dr. John H. Keiser is and was at all times relevant to this Complaint the president and chief executive officer of the University. Among other things, he and his staff are charged with the responsibility for administering and enforcing the University's policies as they relate to student speech and expressive activities.

17. Defendant Barbara D. Burns is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, she is

3

charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

18. Defendant Michael L. Franks is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, he is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

19. Defendant Tom Carlson is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, he is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

20. Defendant Bill Darr is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, he is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

21. Defendant Michael Duggan is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, he is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

22. Defendant Mary Sheid is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, she is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

23. Defendant Phyllis Washington is and was at all times relevant to this Complaint a member of the Board of Governors of the University. Among other things, she is charged with the responsibility for enacting and enforcing the University's policies as they relate to student speech and expressive activities.

24. Each defendant is sued in his or her official capacity, and in his or her individual and personal capacity.

## V.

## STATEMENT OF FACTS

25. The University's policies restricting speech are titled the "Public Forum Policy," the "Advertising, Distribution and Solicitation Policy," "Speakers and Facilities Usage," and "Office of Student Activities Articles of Registration," (collectively referred to as the "Policies"). Each policy is attached as Exhibits A, B, C, and D, respectively and incorporated herein by reference.

26. The Policies place restrictions on student expression at the University.

27. Violations of the Policies are subject to disciplinary sanctions.

### Challenged Policies

*Public Forum Policy*

28. The University's Public Forum Policy provides that, students are not permitted to engage in campus debates, forums, rallies, demonstrations, peaceful protests, and other similar public forum activities except in a free speech area called the Bear Paw.

29. Before speaking in the Bear Paw, a student must first register with the Conference Services Office.

5

30. The Bear Paw is approximately sixty feet by fifty feet in area.

31. The University has approximately 18,000 students.

32. Only a small portion of the students on campus can be accommodated by the Bear Paw at any given time.

33. Speech on numerous topics would interest and attract many more students than could safely fit in the Bear Paw.

34. If the Bear Paw is fully occupied, other students and student groups outside the area are prohibited from engaging in campus debates, forums, rallies, demonstrations, peaceful protests, and other similar public forum activities anywhere on campus.

35. The small area of the Bear Paw strictly limits the ability of students and student groups to engage in free speech at the University.

36. Limitation to the Bear Paw gives students only a small part of campus in which to exercise their free speech rights.

37. Limiting free speech to only one location on campus is inherently unconstitutional because it places a prior restraint on student speech in all locations except the free speech area.

*Advertising, Distribution and Solicitation Policy*

38. Only recognized student organizations, University organizations, and University departments may solicit on the University campus.

39. The University defines "solicitation," in part, as the oral, written, or electronic appeal or request to support or join an organization other than a recognized

6

Case 6:03-cv-03421-GAF    Document 1    Filed 11/21/03    Page 6 of 20

student, faculty, or staff organization, or the distribution of information in support of these activities.

40. Only recognized student organizations are permitted to use the Campus Mail service.

41. Only recognized student, faculty and staff organizations are authorized to post materials on bulletin boards in University buildings other than the Plaster Student Union.

42. Posting of materials in locations other than designated bulletin boards is not permitted, except for student elections and homecoming activities.

43. Only recognized student organizations are permitted to use chalk on sidewalks to advertise their events.

44. All written materials distributed on campus must be labeled to indicate the person or organization sponsoring them.

45. The University does not permit anonymous leafleting.

46. Written materials may not be distributed inside any University building except the Plaster Student Union.

47. Distribution of written materials in the Plaster Student Union is limited contact tables.

48. Student groups that are not recognized by the University cannot distribute written materials in the Plaster Student Union, even at a contact table.

**Speakers and Facilities Usage**

49. Any speaker appearing in a University facility must be sponsored by a recognized student organization.

7

50. Student organizations that are not recognized cannot hold events featuring speakers in University facilities.

51. Individual students are not permitted to hold events featuring speakers in University facilities.

52. The University determines the "appropriateness" of a speaker when using University facilities.

53. The University has not defined "appropriateness."

54. The University has no rules or regulations to assist University officials in determining whether a particular speaker is sufficiently appropriate to use University facilities.

*Recognized Student Groups*

55. University policy regarding recognized student groups is contained in the document titled "Office of Student Activities Articles of Registration," attached hereto as Exhibit D and incorporated herein by reference.

56. In order for a student organization to exist on campus, the University's Office of Student Activities must recognize it.

57. A student organization must be recognized by the University in order to have permission to meet on campus.

58. A student organization in the process of becoming recognized is only permitted to meet three times in University facilities, until recognized.

59. In order to be recognized by the University's Office of Student Activities, a student organization must agree not to discriminate in leadership or membership based upon, *inter alia,* political affiliation or beliefs, and religion.

60. A University student group called the Young Democrats could not require all of its leaders to be affiliated with the National Democratic Party or even believe in democracy.

*Application to the Plaintiff*

61. The Plaintiff, Mr. Cooper, desires to engage in campus debates, forums, rallies, demonstrations, peaceful protests, and other similar public forum activities on campus grounds outside of the Bear Paw designated free speech area.

62. Mr. Cooper has refrained, and continues to refrain, from speaking on University grounds outside the designated free speech area.

63. On or about July 21, 2003, Mr. Cooper submitted an application for recognition of the group YAF to the Office of Student Activities.

64. On or about August 24, 2003, Mr. Cooper and other members of YAF distributed literature outside of the Bear Paw free speech area during the New Student Festival.

65. On or about August 24, 2003, Mr. Cooper and other members of YAF were distributing copies of their group's newspaper, the Bear Review outside of the Student Union building.

66. On or about August 24, 2003, Mr. Cooper and other members of YAF were utilizing an empty table for distribution of their newspaper.

67. Mr. Cooper and other members of YAF had previously obtained permission to use the table from the recognized student group who had reserved the table.

68. After distributing the newspaper for only a few minutes, Mr. Cooper and other members of YAF were told by Jill L. Drake, Director of Student Activities, to stop distributing their literature in that area and move to the Bear Paw free speech area.

69. At that time, other students and unrecognized student groups were also distributing literature outside of the Student Union building.

70. On or about August 27, 2003, Mr. Cooper was told by administration officials that he and other members of YAF could distribute their newspaper outside of the Bear Paw free speech area, using a table in the "corral area."

71. However, because YAF is not a recognized student group, they were told by campus officials that they could only distribute the literature from the tables in the "corral area" on three occasions during the year.

72. On or about September 11, 2003, members of the student group Students United for International Peace, chalked anti-war messages on campus sidewalks.

73. On or about September 16, 2003, Mr. Cooper and members of YAF chalked responses to the anti-war messages on campus sidewalks.

74. On or about October 6, 2003, Mr. Cooper was notified via an e-mail message from John D. Taylor, Assistant Dean of Students, that he and YAF members had violated the University policy on chalking.

75. On or about October 14, 2003, the University Student Government Association approved YAF as a recognized student group.

76. On or about October 16, 2003, the President of the Student Government Association vetoed the approval of YAF.

77. As grounds for his veto, the President of the Student Government Association cited statements made by Mr. Cooper regarding his opposition to University policies restricting speech.

78. Mr. Cooper has censored, and continues to censor, his own speech on campus grounds outside of the Bear Paw free speech area.

79. Mr. Cooper has censored, and continues to censor, his speech in the Bear Paw free speech area without first obtaining permission from University officials.

80. Mr. Cooper has censored, and continues to censor, his own speech by refraining from distributing literature inside University buildings.

81. Mr. Cooper has censored, and continues to censor, his own speech by refraining from distributing literature that does not identify himself or YAF as the sponsor.

82. Mr. Cooper and other members of YAF desire to use the Campus Mail system, advertise their events by chalking on University sidewalks, utilize all University bulletin boards, invite speakers to events in University facilities, and solicit individuals regarding YAF, but are prohibited from doing so by the University.

83. Plaintiff is suffering irreparable harm from the conduct and challenged policies of Defendants.

84. Unless and until the conduct and challenged policies of Defendants are enjoined, Plaintiff will continue to suffer irreparable harm.

## VI.

## STATEMENT OF LAW

85. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the defendants, acting under the color, authority and pretense of

state law, statutes, ordinances, regulations, customs, usages, and policies of the University and the State of Missouri.

86. Speech is entitled to comprehensive protection under the First Amendment.

87. First Amendment rights of speech and association extend to campuses of state universities.

88. Defendants' Policies limiting speech are prior restraints, and grant University officials unfettered discretion in the restriction of expression.

89. Defendants' Policies are unconstitutional on their face and as applied because they are overbroad, and impermissibly restrict student expression.

90. Defendants' Policies limiting speech are unconstitutional on their face and as applied because they are vague and overbroad, impermissibly restrict student expression and association, violate freedom of the press, are a prior restraint, and grant University officials unfettered discretion in the restriction of expression.

91. Plaintiff is suffering irreparable injury from the challenged policies of Defendants, which cannot be fully compensated by an award of money damages.

92. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to appropriate relief invalidating the unconstitutional University policies.

## VII.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE UNITED STATES CONSTITUTION

93. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

12

94. The Policies and conduct of the Defendants constitute a violation of the First and Fourteenth Amendments of the United States Constitution, by among other things, restricting all campus debates, forums, rallies, demonstrations, peaceful protests, and other similar public forum activities to a limited free speech area.

95. Defendants' Policies constitute an impermissible viewpoint-based and content-based restriction of constitutionally protected expression.

96. The Policies vest unfettered discretion in the Defendants to restrict constitutionally protected expression.

97. The Policies and the actions of the Defendants are prior restraints and restrictions on speech in campus areas that are commonly considered traditional and/or designated public fora.

98. The Policies are not content-neutral time, place, and manner restrictions on expression. Further, they are not narrowly tailored, do not serve significant government interests, and do not leave open ample alternative channels of communication, as the Constitution requires.

99. Defendants' Policies are vague and overbroad.

100. The Policies restrict students' freedom of association and are not supported by a narrowly tailored compelling state interest.

101. The Policies fail to provide adequate procedures for administrative and judicial appeal and redress of denials to engage in expression.

WHEREFORE Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

# VIII.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE RIGHT TO FREEDOM OF THE PRESS
## UNDER THE UNITED STATES CONSTITUTION

102. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

103. The distribution of written expression is a classic example of the exercise of the right to freedom of the press.

104. No compelling government interest exists to justify the restrictions imposed on such an exercise of the freedom of the press by the Defendants' Policies, practices, and actions, nor is the restriction the least restrictive means available to serve any permissible government purpose intended to be served by Defendants' Policies and practices dealing with literature distribution.

105. Defendants' Policies on their face and as applied impose a system of prior restraints on the publication and/or circulation of Plaintiff's printed expression. This system of prior restraints is unconstitutional under the First and Fourteenth Amendments.

106. By their actions, Defendants have violated Plaintiff's rights to distribute literature expressing his political views.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## IX.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE RIGHT TO DUE PROCESS
## UNDER THE UNITED STATES CONSTITUTION

107. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

108. The policies and conduct of the Defendants constitute a violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

109. Defendants' policies are vague.

110. Defendants' Policies and practices fail to adequately advise, notify, or inform students threatened with disciplinary action for violation of these provisions.

111. Defendants' Policies restricting speech fail to adequately advise students subject to discipline under them of the obligations they create, they are unconstitutionally vague, on their face, in violation of the due process guarantee of the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## X.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## UNDER THE UNITED STATES CONSTITUTION

112. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

15

113. Defendants' Policies and practices, on their face and as applied, treat Plaintiff and other students and student organizations differently from other similarly situated individuals and groups on the basis of the content of their speech, viewpoint, and their size.

114. Defendants do not have a compelling state interest for such disparate treatment of Plaintiff's expression.

115. Therefore, said conduct of Defendants comprises an unconstitutional and continuing interference and infringement upon the rights of Plaintiff and other student groups and individuals to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## XI.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE PLAINTIFF'S RIGHT TO FREEDOM OF ASSOCIATION

116. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

117. By enacting and enforcing highly restrictive assembly policies, speech polices and solicitation guidelines that are vague, overbroad and explicitly and implicitly discriminate on the basis of viewpoint, Defendants, acting under color of state law, have deprived the Plaintiff and other students of their clearly established right to freedom of association secured by the First Amendment to the Constitution.

16

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## XII.

## SIXTH CAUSE OF ACTION

## IMPOSITION OF UNCONSTITUTIONAL CONDITIONS

118. Plaintiff realleges all matters set forth in the preceding paragraphs and incorporates them herein.

119. By enacting and enforcing the speech-restrictive regulations outlined above and by banning a wide variety of constitutionally protected speech, Defendants have placed unconstitutional conditions on the receipt of the government benefits of a higher education at a state-supported University.

120. Defendants have deprived Plaintiff of his clearly established rights to freedom of speech, expression and association secured by the First Amendment to the Constitution by requiring him to forfeit these rights in exchange for a governmental benefit.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that the Court:

a. Declare that the University Policies and practices described in this Complaint are unconstitutional on their face because they violate the rights to freedom of speech, freedom of the press, the rights to due process, and the rights of equal protection, all

guaranteed to the Plaintiff and others under the Constitution of the United States and by operation of federal law;

b. Declare that the University Policies and practices, described in this Complaint are unconstitutional as applied or threatened to be applied to the activities of Plaintiff, described in this Complaint, because they violate the Plaintiff's rights to freedom of speech, freedom of the press, the rights to due process, and the rights of equal protection, all guaranteed to the Plaintiff and others under the Constitution of the United States and by operation of federal law;

c. Issue a preliminary and permanent injunction against the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf, from enforcing said policies against the Plaintiff and others for his/their participation in the activities described in this Complaint;

d. Grant to Plaintiff an award of actual and nominal damages in an amount deemed appropriate by this Court;

e. Grant to Plaintiff an award of his costs of litigation, including reasonable attorneys' fees and expenses; and,

f. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 21st day of November, 2003.

Attorneys for Plaintiff,

ALLIANCE DEFENSE FUND LAW CENTER

Benjamin W. Bull*
Arizona State Bar No. 009940
Alliance Defense Fund Law Center
15333 N. Pima Road, Suite 165
Scottsdale, Arizona 85260
Phone: (480) 444-0020
Fax: (480) 444-0025

James Jenkins
Missouri Bar No. 17106
Kevin Theriot*
Georgia Bar No. 373095
Alliance Defense Fund
Midwest Regional Service Center
15660 W. 135th Street
Olathe, Kansas 66062
Phone: (913) 829-7755
Fax: (913) 829-7780

Scott Nehrbass
Missouri Bar No. 46529
Shook, Hardy, & Bacon, LLP
10801 Mastin
Overland Park, Kansas 66210
Phone: (913) 451-6060
Fax: (913) 451-8879

*Motion *Pro Hac Vice* to be submitted

19

Dated: November 12, 2003

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I hereby declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

*Ryan Cooper*
Ryan Cooper